1      IN THE UNITED STATES DISTRICT COURT

2      FOR THE WESTERN DISTRICT OF OKLAHOMA

3   SINGER OIL COMPANY, LLC, an        )
    Oklahoma Limited Liability         )
4   Company,                           )
                                       )
5                                      )
           Plaintiff,                  )    CASE NO. CIV-16-768-M
6                                      )
    vs.                                )
7                                      )
                                       )
8   NEWFIELD EXPLORATION               )
    MID-CONTINENT INC., et al.,        )
9                                      )
                                       )
10                                     )
           Defendants.                 )
11                                     )

12                      **VOIR DIRE**

13              TRANSCRIPT OF JURY TRIAL

14      BEFORE THE HONORABLE VICKI MILES-LaGRANGE

15           UNITED STATES DISTRICT JUDGE

16                NOVEMBER 8, 2017

17

18

19

20

21

22

23

24

25  Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription.

1                    **<u>APPEARANCES</u>**

2  <u>FOR THE PLAINTIFF:</u>

3              STEVEN D. SINGER
             Attorney at Law
4            324 West Maine
             Enid, Oklahoma  73727
5

6  <u>FOR THE DEFENDANTS:</u>

7              GREGORY L. MAHAFFEY
             JOHN PAUL ALBERT
8            BRADY L. SMITH
             Mahaffey & Gore
9            300 NE 1st Street
             Oklahoma City, Oklahoma 73104
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (The following record was made in open court on November 8,

2   2017, in the presence of all parties, counsel, and out of the

3   presence and hearing of the prospective jury panel.)

4            THE COURT:  Is there anything that we need to take up?

5            MR. MAHAFFEY:  I don't think so.

6            THE COURT:  We're just waiting on the jury.

7            MR. SINGER:  Deposition designations, but I have been

8   mewing about that all morning.

9            THE COURT:  You'll have it.

10            MR. SINGER:  Thank you, Your Honor.

11            THE COURT:  All of you will have that available to you.

12      (Jury panel enters.)

13            THE COURT:  Would counsel approach the bench for just a

14   moment?

15      (The following proceedings were had at the bench and out of

16   the hearing of the jury.)

17            THE COURT:  I just wanted to make sure that

18   you-all had exhausted --

19            MR. MAHAFFEY:  Short of making his corporate

20   representative and my representative go in the room together and

21   talk, I think we have exhausted -- but that's the only thing I

22   could think of is making them do it.

23            THE COURT:  I don't think we're going to make anybody

24   do anything.

25            MR. MAHAFFEY:  We had some additional dialogue, Judge,

1   and, unfortunately, we're just a little bit far apart on what

2   each of us think it's valued at, so sorry.

3          THE COURT:  Don't be sorry.  That's the way these

4   things go, so I just wanted to check.

5       (The following record was made in open court, in the

6   presence of all parties, counsel, and in the presence and hearing

7   of the prospective jury panel.)

8          THE COURT:  Good morning, ladies and gentlemen.  I'm

9   Judge Vicki Miles-LaGrange and I'll be presiding over this jury

10  trial.  You'll be meeting all the parties and the lawyers and

11  everything.

12      First, I would like to ask you if you would stand and take

13  your oath as prospective jurors in this case.

14      (Prospective jury panel sworn.)

15         THE COURT:  You may be seated.

16      Ms. Spaulding, to my left, is the Court's courtroom deputy

17  and you will get to know her, those of you who end up being

18  selected for this jury.  And our court reporter is here to my

19  right, and she very diligently takes care of making sure that

20  every word that's said during the course of these proceedings

21  will be recorded and become part of the record.  And then another

22  lady that you may see come in is Ms. Lori Fagan.  And she's one

23  of the Court's very long-time -- and that may be her coming in

24  now -- judicial -- federal judicial law clerks who has been with

25  the Court for many, many years.  And she may be in and out a bit.

1       Now that -- I'm going to ask Ms. Spaulding, if you would,

2   call the name of the first randomly -- the first 13 prospective

3   jurors, and she will give you instruction about where to begin

4   the seating.

5           MS. SPAULDING:  Robert Clinton.  If you'll have a seat

6   on that top bench, furthest to the witness stand.  Mary Malloy,

7   Jason Shirazi, Connie Ennis, Deandre Edwards, Steve Payne, Linda

8   Tucker, Valerie Simer, Kaila Scott, Jana Wall, Melissa Connel,

9   Andrea Mosshart, Biodun Ogunlana.  I apologize if I butchered

10  that name.

11          THE COURT:  Now that the first group of prospective

12  jurors are seated in the jury box, the Court will proceed to

13  conduct this process of voir dire.

14      Let me just say to you that there may be a reason that one

15  of the ladies or gentlemen that are seated here in the box

16  already, there may be some reason why they may not be an

17  appropriate juror in this particular case.  Should that occur, I

18  will ask Ms. Spaulding to just call randomly the next name.  That

19  individual will be excused to go to the jury clerk downstairs and

20  they will give you further proceeding -- what you should do next.

21      This part of voir dire -- of the proceedings is called voir

22  dire.  It's a French word which means "to speak the truth."  No,

23  I don't speak French.  And when I came back home to Oklahoma from

24  law school, they were saying voir dire.  And in Washington, D.C.

25  they said voir dire.  But voir dire, voir dire, and I'm sure you

1    French speakers would be able to do it absolutely correctly, it's

2    really just a legalistic way of saying that we will now question

3    some of you, perhaps all of you, for the purpose of selecting a

4    proper jury in this particular case.

5        Before proceeding, I would like to make just a few

6    introductory remarks.  And I'm sure that many of you know how

7    this process of selecting a jury fits into our judicial system.

8        As you probably know, our system of justice involves active

9    participation by the Court, that's me as the judge, or whoever

10   the presiding judge is; by counsel for the parties, and you will

11   meet all of the lawyers who represent one side or the other --

12   one party or the other; and both the plaintiff and the -- and the

13   defendants, you'll meet.  And also, by this process of voir dire,

14   which is a carefully selected jury.

15       The jury is really carefully selected to be certain of two

16   things:  One, that if you're selected in this case you will be

17   able to be both fair and impartial to both the plaintiff, as well

18   as to the defendant.  The jury is selected by this process of

19   examination, voir dire, by asking questions.

20       I'll be asking you a lot of questions that may involve your

21   views, your opinions, or even your experiences that may impact

22   your own ability to be fair and to be an impartial juror in this

23   particular case, if you're selected to serve on this jury.

24       If for any reason at all you are either unable or unwilling

25   to be a fair and impartial juror in this particular case, if

1  selected, then certainly the parties need to know that, as well

2  as the Court also needs to know that.

3       In such an event, I would ask you to remember that you

4  should never feel bad about your views or your opinions or your

5  experiences that may reflect unfavorably upon you.  Indeed, every

6  one of you, every juror here, they are entitled to their own

7  views.

8       It would, however, be a violation of your sworn oath if you

9  failed to share with the Court -- and everything you tell the

10 Court, the Court will communicate with the lawyers.  But it would

11 be a violation of your sworn oath if you failed to indicate your

12 views or your opinions or your experiences that would not permit

13 you to apply the law that the Court will give to you at the very

14 end of the case to both the facts that you find to exist in this

15 case.

16      It's the duty of the panel and of the Court to reveal these

17 views or opinions so that a truly fair and impartial jury can be

18 selected, and one which will follow the law that will be given to

19 you by the Court at the very end of the presentation of all the

20 evidence in the case.

21      Therefore, through this process of voir dire, we seek to

22 determine if any member of the panel cannot, for whatever reason,

23 sit impartially in general in this case, or if there is some

24 reason why a prospective jury cannot sit in this particular case.

25 An answer to a question which reveals partiality is just as

1    important for this Court and these lawyers to -- to know both.

2    Indeed, the very best assistance that you can contribute to this

3    process is to give -- that you can give the Court and to the

4    parties is a very truthful and open response to the questions

5    asked.

6         If for some reason, any reason at all, you would rather --

7    I'm not saying you don't want to answer the question, but you may

8    want to say, may I go to sidebar and respond to that question,

9    certainly the Court will let you do that.

10        If -- first of all, an answer which reveals partiality is

11    just as important to this Court and to our system of justice as

12    an answer which reveals impartiality.  Indeed, we just want you

13    to be truthful and open, and I can't say that too many times.

14        If the questions occasionally seem to you to be prying,

15    please don't be offended.  Every question is asked for a very,

16    very important reason, to enable these lawyers to present their

17    cases.  They are asked so that the Court and the parties, through

18    their lawyers, and the jurors, are satisfied that a proper jury

19    has been selected for this particular case.

20        Again, and I'm -- this is the last thing I'm going to say

21    about voir dire generally.  Simply stated, it's to enable the

22    Court to determine whether or not any prospective juror should be

23    excused from cause for -- from this particular case.  It's to

24    enable the lawyers for the parties to exercise their individual

25    judgment with respect to the preemptory challenges.  And those

1    are the challenges for which counsel, the lawyers, do not -- are
2    not required to give a reason except, for example, a juror may
3    not be stricken even on a preemptory challenge for any reason
4    such as a racially discriminatory one or that line of things.
5         This case -- Counsel, what was the guesstimate for counsel
6    in terms of the length of time that the case may be, was it three
7    or four days?
8              MR. SINGER:  Three.
9              THE COURT:  Three days.  And we know that Friday is a
10   holiday, it's Veteran's Day, and we will not -- the courthouse
11   will be closed and we will not work on that day.  But that's the
12   best guesstimate that the parties have in terms of the
13   approximate length of the trial.  Maybe we'll be a little bit
14   shorter, maybe we'll be a little bit longer, maybe we'll hit it
15   right on what the target is, or was, based on the prior
16   discussions.
17        Does anything so far present any special problem to any of
18   the prospective jurors seated here?
19        Yes, ma'am?
20             PROSPECTIVE JUROR OGUNLANA:  I'm not going to be able
21   to sit for too long because I have sciatic pain and I have to be
22   moving around, and I know that's not going to be possible for me.
23   I have had two back surgeries and I have this pain on my side, so
24   it's really difficult for me to sit still for a long period of
25   time.

1        THE COURT:  Very well.  Is it Ms. Ogunlana?

2        PROSPECTIVE JUROR OGUNLANA:  Ogunlana.

3        THE COURT:  Ms. Ogunlana, I think I will excuse you and

4   I will ask you to return to the jury clerk downstairs.  And she

5   will advise you, maybe there will be a one-hour case that you may

6   be able to serve on, based on just what you have shared.  And

7   thank you very much for -- for your willingness to serve.  If

8   you'll report to the jury clerk -- jury clerk downstairs, she'll

9   advise you.

10      The clerk will call the next prospective juror.

11        MS. SPAULDING:  Tanner Smith.

12        THE COURT:  Good morning, Mr. Smith.  Did you hear all

13  of the many questions that I asked this prospective panel, have

14  you heard all of the questions?

15      (Juror nodded.)

16        THE COURT:  And I'm going to ask you to speak audibly

17  to us because the court reporter has to take down everything

18  that's said in the court.

19        PROSPECTIVE JUROR SMITH:  Okay.

20        THE COURT:  Thank you so much.

21      I'm not going to ask all of the questions.  Are there any

22  things -- will you be -- if you're selected to serve on this

23  jury, Mr. Smith, could you be fair and impartial to all of the

24  parties in the case, both sides of the case?

25        PROSPECTIVE JUROR SMITH:  Yes, ma'am.

1      THE COURT:  Is there anything that I asked about -- and
2 I'm not going to go through all of the litany of questions that
3 I've just asked.  Is there anything at all that you can think of
4 that this Court needs to know that -- that I have asked about
5 here in the last few moments?
6      PROSPECTIVE JUROR SMITH:  No.
7      THE COURT:  Very well.  And should that occur, please,
8 if something jogs your memory, say, I need to let her know that
9 or let that be known, please don't hesitate to do that.
10      I'm going to give you a very brief joint statement of the
11 case that the parties have submitted.  The plaintiff is this --
12 the plaintiff in this case is Singer Oil Company.  It's an oil
13 and gas company which operates vertical wells in Kingfisher
14 County, Oklahoma, among others.
15      The defendant, Newfield Exploration, is an oil and gas
16 company which drills and operates horizontal and vertical wells
17 in Kingfisher County, among others.
18      The plaintiff alleges that its vertical well, the Smith
19 No. 1 through 18 (sic), was ruined by Newfield's completion of
20 its Edgar well.  Plaintiff alleges that the Edgar completion was
21 commenced without Newfield giving plaintiff the required advanced
22 notice.
23      Plaintiff alleges that immediately before Newfield commenced
24 completion of the Edgar well, the Smith well was producing oil
25 and gas.  Plaintiff alleges the Smith well has been permanently

1  damaged.

2      Plaintiff asserts claims of negligence, subsurface trespass,

3  private nuisance and breach of contract.  Newfield denies all of

4  the plaintiff's allegations.  Specifically, Newfield alleges that

5  plaintiff was given notice weeks and months in advance of the

6  commencement of the completion of the Edgar well, but failed to

7  take any actions it may have believed appropriate to protect its

8  well.

9      Further, Newfield alleges that plaintiff has no proof that

10  Newfield's well was the actual cause of any damage to the

11  plaintiff's well.  Newfield alleges that even if Newfield damaged

12  plaintiff's well, such damage was minimal since plaintiff's well

13  is still capable of producing oil and gas, but plaintiff has

14  wholly failed to perform any operations to restore production.

15  Newfield also alleges that even if it was negligent, the

16  plaintiff assumed the risk and was contributorily negligent by

17  failing to take any actions to protect its well after receiving

18  several notices of Newfield's completion operation.

19      Newfield alleges that even if the plaintiff's well was

20  damaged, the valuation for such damages is far lower than

21  plaintiff has alleged.  Newfield alleges that plaintiff's

22  damages, if any, are capped at the lower of either the cost of

23  repair or the value of the plaintiff's well, if it was destroyed.

24      Finally, Newfield alleges that the plaintiff breached its

25  previous settlement agreement with Newfield by revealing its

1  terms, notwithstanding the fact that such agreement contained a

2  strict confidentiality provision, and Newfield claims that it has

3  been damaged by plaintiff's breach of the confidentiality

4  provision.

5     I'm going to introduce the lawyers in this case -- well,

6  first of all, let me ask you, have any of you heard anything or

7  read anything about this particular case, to your knowledge, that

8  would in any way affect your ability to be fair and to be

9  impartial in this case, if you're selected as a juror in this

10  case?  Any of you that would be unable to do that?

11     (No response.)

12     THE COURT:  I'm going to introduce the lawyers in the

13  case, and I'm going to ask them to -- in turn to introduce the

14  individuals or entities that they represent.

15     Representing -- the two parties in the case are the

16  plaintiff, Singer Oil Company, LLC, and that entity is being

17  represented by Mr. Steven Singer.

18     Mr. Singer?

19     MR. SINGER:  Thank you, Your Honor.  I am Steve Singer

20  and this is my client, Goetz Schuppan.

21     THE COURT:  Do any of you know or have you ever done

22  business with Mr. Singer or -- the name of your -- your law firm,

23  Mr. Singer?

24     MR. SINGER:  Judge, I'm just a lawyer.  I don't have a

25  firm.

1      THE COURT:  Okay.  Not just a lawyer.  You're not a

2  firm, I get it.

3      MR. SINGER:  Yeah, I don't have a firm.

4      THE COURT:  Thank you.

5  Representing the defendant in this case -- the defendant is

6  Newfield Exploration Mid-Continent, Incorporated.  Do any of you

7  know or have you done business with or stock in or any such

8  thing?

9      (No response.)

10      THE COURT:  Very well.  Representing Newfield

11  Exploration Mid-Continent, Incorporated, is -- I'll call their

12  names and then I'll let them introduce their -- the clients that

13  they represent.  Mr. Brady Smith, Mr. Gregory Mahaffey, Mr. John

14  Albert -- there he is back there -- and Mr. Richard Rose.

15      MR. MAHAFFEY:  Judge, Mr. Rose isn't here.  He has

16  to -- going to be out at the legislature today, but he's not

17  here.

18      THE COURT:  Very well.  Will he be here during the

19  course of --

20      MR. MAHAFFEY:  He will not be here during the trial.

21      THE COURT:  He will not be here.  Thank you very much.

22  Do any of you know or have you ever done business with the

23  firm of these gentlemen, know them, done business with the

24  company, any relationship at all that you are aware of?

25      (No response.)

1          THE COURT:  Very well.  Thank you very much.

2          MR. MAHAFFEY:  Judge, would you like me to introduce my

3   corporate representative?

4          THE COURT:  Please do.  Thank you, Counsel.

5          MR. MAHAFFEY:  This is Mr. Michael Harvey.  He's a

6   production completions engineer with Newfield Exploration.  And

7   he's the corporate representative today.  We also have in the

8   audience Mr. Andrew Bremner, who is in-house counsel with

9   Newfield.  And our firm is Mahaffey & Gore here in Oklahoma City.

10          THE COURT:  Very well.  Have any of you ever done

11   business or been represented by or been involved in a lawsuit of

12   any type with Mr. Mahaffey's firm?  Any of you at all?

13      (No response.)

14          THE COURT:  Any of you ever done any business with

15   Newfield Exploration Mid-Continent, Inc., at all or aware of

16   them?

17      (No response.)

18          THE COURT:  Very well.  I'm going to ask the -- one of

19   the lawyers from each side, and we'll start with the plaintiff's

20   lawyer, Mr. Singer, if you will introduce your prospective

21   witnesses that may be called in your case in chief.

22          MR. SINGER:  Yes, Your Honor.  Our witnesses would be

23   Mr. Schuppan.  We have a representative from the Oklahoma

24   Corporation Commission, Mr. Brad Ice, and he lives in Kingfisher.

25   We have a worker that helped on the well after it was hurt, and

1   his name is Dale Turner, and he lives in Kingfisher.

2       I have got an expert from Oklahoma City who is going to

3   discuss the value of our loss, and his name is John Paul Dick.

4   And I have an expert from Tulsa who -- an engineer that's going

5   to talk to us about how the accident or the incident happened,

6   and his name is Dan Arthur from Tulsa.  And, Judge, those are my

7   witnesses.

8               THE COURT:  Very well.  Thank you, Mr. Singer.

9               MR. SINGER:  Judge -- forgive me, Your Honor.  Forgive

10  me.

11              THE COURT:  That's all right.

12              MR. SINGER:  I have three corporate representative

13  witnesses from Newfield that I deposed, that would be Mr. Hunt

14  from Houston; Mr. Sizemore, I believe he also is from Houston;

15  and Mr. Harvey, who is here live.  So that is the totality of my

16  witnesses.

17              THE COURT:  Very well.  Ladies and gentlemen of the

18  prospective panel, I know that sometimes it's hard to hear the

19  name of someone and make a determination, do I know this person,

20  do I not.  And it has happened that the person walks in and

21  you're like, oh, my gosh, that's my next-door neighbor.  Do any

22  of you know or think you know any of the individuals who may be

23  called in the case in chief of the plaintiff in this case?

24      (No response.)

25              THE COURT:  Any of you know or think you know any of

1  those individuals?

2      (No response.)

3          THE COURT:  Very well.  Let's turn to Newfield

4  Exploration Mid-Continent, Inc.  And I'll recognize you,

5  Mr. Mahaffrey (sic), if you'll tell us the people --

6          MR. MAHAFFEY:  Thank you, Your Honor.  Newfield has

7  listed some of the same --

8          THE COURT:  Right.

9          MR. MAHAFFEY:  -- calling Mr. Brad Ice, a district

10 office -- but if they call him, we obviously will not.  We have a

11 one outside consultant, Mr. Daniel Reineke.

12         THE COURT:  Mr. Mahaffrey, the court reporter is

13 asking, can you just slow down just a bit?

14         MR. MAHAFFEY:  I'm sorry.  Thank you.

15         THE COURT:  Because everything has to be taken down.

16 Thank you.

17         MR. MAHAFFEY:  Hopefully, we're only going to have

18 three witnesses, Mr. Ice and Mr. Michael Harvey, completions and

19 operations engineer, and also Mr. Daniel Reineke, who is a

20 consulting -- a petroleum engineer and a former operator.  Those

21 are our planned witnesses, Judge.

22         THE COURT:  Very well.  Thank you very much,

23 Mr. Mahaffrey.

24     Do any of you know or think you know any of the individuals

25 who may be called in the case in chief or otherwise called by

1   Mr. Mahaffey or any of the lawyers in his firm?

2       (No response.)

3           THE COURT:   Thank you.

4       I'm going to be asking you a series of questions, some of

5   which have been requested by the plaintiff in this case, others

6   which have been requested by the defendant in the case, but I'll

7   try not to repeat myself.  We have heard a brief summary of what

8   the case is about.

9       Are there any of you that know any other member of the

10  prospective panel as you sit there today?

11      (No response.)

12          THE COURT:   Nobody's brother is on, or your mom or dad

13  or sister or brother or neighbor, even?

14      (No response.)

15          THE COURT:   Have any of you or any close family members

16  had any business or otherwise dealings with Newfield Exploration

17  Mid-Continent, Inc., generally known as Newfield, or with any

18  person affiliated with Newfield?  Any of you at all have had that

19  experience or otherwise?

20      (No response.)

21          THE COURT:   Excluding any possible mutual fund or

22  401(k) type of holdings, do you or does any member of your

23  immediate family own individual shares of stock in the publicly

24  traded company of Newfield Exploration?

25      (No response.)

1          THE COURT:  Any of you at all?

2      The lawyer representing the plaintiff is Mr. Steve Singer,

3  who is from Enid.  I think I have asked and no one knows or has

4  had any dealings with Mr. Singer as a lawyer or otherwise; is

5  that correct?

6      (No response.)

7          THE COURT:  You have indicated -- I have asked you

8  about all of the -- well, I'm going to give you the list that

9  they have provided for the Court of lawyers representing

10 Newfield, because there are some that I haven't called their

11 names.  They are Andrew Bremner, Esquire, Newfield's general

12 corporate counsel from Houston, Texas; Mr. Gregory Mahaffey;

13 Brady Smith; John Albert; Richard Rose of Mahaffey & Gore, which

14 is a professional corporation here in Oklahoma City.  Any of you

15 know or think you know any of those additional attorneys or had

16 any dealings with them?

17     (No response.)

18         THE COURT:  Do any of you know any of the other lawyers

19 of this law firm or done business with the law firm on something

20 totally unrelated to this type of matter but still dealing with

21 the Mahaffey firm?  Any of you at all had dealings with that law

22 firm?

23     (No response.)

24         THE COURT:  You have heard the witnesses that the

25 plaintiff expects to call, and there will probably be some

1  lapping over of the defendants calling that same witness for a

2  different purpose.  Are any of you or any close friend or any

3  relative in the oil and gas business?  Any of you at all have any

4  relatives or friends?

5         PROSPECTIVE JUROR CONNEL:  Yes, ma'am.  I have an uncle

6  in Woodward.

7         THE COURT:  Let me get my chart with your names on it.

8  Excuse me.  You're Ms. Connel?

9         PROSPECTIVE JUROR CONNEL:  Yes, ma'am.

10         THE COURT:  Ms. Connel, and who was it in your -- in

11  your family?

12         PROSPECTIVE JUROR CONNEL:  Gene Cook, my uncle, and his

13  son, Mike.

14         THE COURT:  Do any of you know or done business, to

15  your knowledge, with -- that's a tough question for entities of

16  your nature --

17         MR. MAHAFFEY:  Judge, I apologize.  Even with my

18  hearing aid, I'm a little hard of hearing, I couldn't hear who

19  her uncle was.

20         PROSPECTIVE JUROR CONNEL:  Gene Cook, Woodward.

21         MR. MAHAFFEY:  I don't know a Gene Cook.  I have not

22  done any business with Mr. Cook.

23         THE COURT:  Very well.  And Ms. Spaulding is going to

24  give you the microphone, so it will help us all hear each of you.

25         PROSPECTIVE JUROR SIMER:  I also need to answer that

1  question.

2           THE COURT:  Very well.  And you are, is it Ms. Simer?

3           PROSPECTIVE JUROR SIMER:  Simer, yes.  My son just

4  recently took a job as an engineer with an oilfield equipment

5  company.

6           THE COURT:  What's the name of the company --

7  equipment --

8           PROSPECTIVE JUROR SIMER:  Horn Equipment in Moore,

9  Oklahoma.

10          THE COURT:  Okay.  Do you know or have you done

11 business with either of the entities that are parties in this

12 lawsuit?

13          PROSPECTIVE JUROR SIMER:  No, I have not.

14          THE COURT:  Very well.  Let me ask the lawyers, are

15 you -- do you have any relationship with Ms. Simer's son --

16          MR. MAHAFFEY:  We're not, Your Honor.

17          THE COURT:  And what about you-all?

18          MR. SINGER:  No, Your Honor.

19          THE COURT:  Very well.  Just asking.

20     Do any of you in the prospective jury -- oh, I'm sorry.

21 Pardon me.  Mr. Clinton?

22          PROSPECTIVE JUROR CLINTON:  I don't have any relatives

23 that are involved in oil and gas.  I have a close friend, who's

24 also a client, that is involved with oil and gas.

25          THE COURT:  What's the nature of your work that you do,

1   Mr. Clinton?

2           PROSPECTIVE JUROR CLINTON:  I'm a CPA and an attorney

3   and I have a small wealth management firm.

4           THE COURT:  Very well.

5           PROSPECTIVE JUROR CLINTON:  And one of my principal

6   clients is involved in the oil and gas industry.

7           THE COURT:  Very well.  To your knowledge, does he have

8   any relation to this -- anyone in this --

9           PROSPECTIVE JUROR CLINTON:  I would not actually know,

10  you know, his industry contacts, particularly.

11          THE COURT:  Do you mind disclosing his name so I can

12  ask them if they have done business --

13          PROSPECTIVE JUROR CLINTON:  His name is Bob Porshow

14  (phonetic).  Bob Porshow, or Robert.  He has a company called

15  Herv, H-E-R-V, Herv Oil.  And he also is related to their

16  exploration company, which is SPS Exploration.

17          THE COURT:  Very well.  Counsel, could you hear?

18          MR. MAHAFFEY:  I heard Herv.  I don't know of any

19  relationship we have with --

20          MR. SINGER:  Agreed, no relations.

21          THE COURT:  Very well.

22          MR. MAHAFFEY:  Judge, I need to retract.  If he said --

23  was the owner of the company is Herv?  We have represented them.

24  I don't know what -- but anyway, we have represented Herv.

25          THE COURT:  Is there anything at all that would make

1  you not be fair and impartial to all the parties in this case,

2  Mr. Clinton, if you're selected?

3          PROSPECTIVE JUROR CLINTON:  No.

4          THE COURT:  Very well.  Thank you.

5      I believe -- is it Shirazi?

6          PROSPECTIVE JUROR SHIRAZI:  Yes.  I have an aunt that's

7  a geologist for Devon Energy.

8          THE COURT:  Very well.  What's her name?

9          PROSPECTIVE JUROR SHIRAZI:  Gail Riggs.

10         THE COURT:  Very well.  Do any of you know or think you

11 know -- let me first ask, is Ms. Riggs going to at all be a party

12 in your -- either of your case, or have you done business with

13 her that you're aware of?

14         MR. MAHAFFEY:  I do not know Ms. Riggs.

15         MR. SINGER:  And same answer for plaintiff, Your Honor.

16         THE COURT:  Very well.

17     Any others of you?  I thought I saw another hand.  Is it

18 Ms. Mosshart?

19         PROSPECTIVE JUROR MOSSHART:  Yes, that's correct.  I

20 have a brother-in-law that worked for Chesapeake Energy for

21 several years.

22         THE COURT:  Very well.  And his name was?  Or is, I'm

23 sorry.

24         PROSPECTIVE JUROR MOSSHART:  Benjamin Warren.

25         THE COURT:  Mr. Warren.  Do any of you know or done any

1   business or been involved with Mr. Warren that you are aware of?

2          MR. MAHAFFEY:  I do not know Mr. Warren at Chesapeake.

3   I know people at Chesapeake, but I don't know him.

4          MR. SINGER:  Same, Your Honor.

5          THE COURT:  Very well.  Thank you very much.

6      Any others of you that are in the jury box?

7      (No response.)

8          THE COURT:  Do any of you or any close friends of yours

9   or any relative have any experience or special training in the

10  oil and gas field of swabbing or oil and gas wellbore repair?

11  Any of you at all have any of that in your -- in your work?

12     (No response.)

13         THE COURT:  Do any of you or any close friend or any

14  relative have any experience or special training in the oil and

15  gas field of underground high-pressure hydraulic fracking?  Any

16  of you at all?

17     Mr. Shirazi?

18         MR. SHIRAZI:  I don't have any special training, but I

19  did work in oil and gas for a little over two years.  I worked

20  for Devon.  So I was in the supply chain, so I was exposed to a

21  lot of the things that you're talking about.

22         THE COURT:  Some of the --

23         PROSPECTIVE JUROR SHIRAZI:  Yeah.  Like the swabbing,

24  like I managed service rigs, which swab.  So I wouldn't say I'm a

25  specialist in it, but I do -- I am familiar with it.

1          THE COURT:  Very well.  Let me ask you this,

2     Mr. Shirazi:  If you're selected as one of the jurors in this

3     case, will you be able to be -- be fair and impartial to both

4     parties in the case and base your ultimate decision on the

5     evidence that's been presented in this case?

6          PROSPECTIVE JUROR SHIRAZI:  Yes.

7          THE COURT:  Very well.  I thought you could.  Thank

8     you.

9        Any others of you?

10       (No response.)

11         THE COURT:  Do any of you or any close friend or any

12    relative have any experience -- and I bet Mr. Shirazi is going to

13    talk to me again -- or special training in the oil and gas field

14    of underground high-pressure hydraulic fracturing?  Any of you at

15    all?

16       (No response.)

17         THE COURT:  Oh, he didn't.  Any others that may have

18    had any involvement with that?

19       (No response.)

20         THE COURT:  Have any of you or any relative or close

21    friend ever been involved in a theft or any kind of loss or -- a

22    vandalism loss or some other simple form of loss in which your

23    property was taken from you or damaged without your permission?

24    Any of you or close family member ever had that scenario happen

25    to you in one of these type of context of this case?

1          (No response.)

2               THE COURT:  Any of you at all?

3          (No response.)

4               THE COURT:  Have any of you, or any close family

5     member, ever written a legislator or a letter to the editor -- a

6     letter to the editor of any of these type of oil and gas events

7     that we have been -- I have been asking you about?  Any of you at

8     all?

9          (No response.)

10              THE COURT:  Have any of you, ladies and gentlemen, ever

11    taught any courses or given any kind of speeches on these oil and

12    gas topics that are the center of this case?

13         (No response.)

14              THE COURT:  Are any of you a member of any social

15    organizations, such as rotary clubs, softball, bowling league,

16    hobby club, et cetera, et cetera, et cetera?  Any of you?

17         (Several jurors raised their hands.)

18              THE COURT:  Do you want to tell me, those of you who

19    may have those kinds of --

20              PROSPECTIVE JUROR TUCKER:  I'm a member of the American

21    Nurse's Association.

22              THE COURT:  Very well.

23         Any others of you on the top row that have any associations

24    that may be of interest to these lawyers?  Mr. Shirazi?

25              PROSPECTIVE JUROR SHIRAZI:  I'm a member of the Realtor

1  Association in Oklahoma, but --

2       THE COURT:  Thank you.

3    Mr. Clinton?

4       PROSPECTIVE JUROR CLINTON:  I'm member of the American

5  Society of CPAs, International Executives Group of Oklahoma City,

6  Oklahoma Bar Association.

7       THE COURT:  You're a lawyer and a CPA?  Very well.

8  Thank you.  Any -- were you finished, Mr. --

9       PROSPECTIVE JUROR CLINTON:  Yes, ma'am.

10       THE COURT:  Thank you.

11    Any others of you on Row 1 that have any social

12  organizations that you participate in or belong to?

13    (No response.)

14       THE COURT:  Thank you.  Have any of you or any close

15  family member ever had a negative experience with the law or

16  the -- or legal experience at all that in any way might affect

17  your ability to be fair and impartial to the parties in this

18  case?  Any of you ever had any -- anything like that happen or

19  thoughts or experiences?

20    (No response.)

21       THE COURT:  Very well.

22    Is there anything that I may not have asked you about that

23  in any way you could think of prevent you from being a fair and

24  impartial and unbiassed and unprejudiced juror if you're selected

25  to serve?  Any of you that couldn't do that with what we know --

1    what you know about the case at the juncture, any of you at all?

2        (No response.)

3            THE COURT:  I think I have asked you most of these.

4        Do any of you or any close friends or relatives, are they --

5    do they work in the oil and gas industry at all?  I think I asked

6    that in some context.  Any of you at all?

7        (No response.)

8            THE COURT:  Do any of you, close family members,

9    friends work for the Oklahoma Corporation Commission, have any

10   people there?

11       (No response.)

12           THE COURT:  I believe I have asked the question, but

13   I'll ask it again, have any of you or any close family member

14   been involved with any of the oil and gas companies that are part

15   of this case, to your understanding?

16       (No response.)

17           THE COURT:  Have any of you or any close family members

18   have any kind of association, done work on any of the wells that

19   have sprouted up during this process of jury selection, any of

20   you at all?

21       (No response.)

22           THE COURT:  Do any of you -- have any of you had any

23   dealings with Newfield stock at all, to your knowledge, own any,

24   any close family member?

25       (No response.)

```
 1            THE COURT:  Is there anything at all that I may not
 2   have inquired about, but if it came forth during -- in response
 3   to a question, is there anything at all that you are aware of
 4   that would prevent you from being -- if selected, being a fair
 5   and impartial juror to all of the parties in the case, if you're
 6   selected?
 7        (No response.)
 8            THE COURT:  Is there anyone that could not do that?
 9        (No response.)
10            THE COURT:  Have I asked you-all, has anybody owned,
11   yourselves, among yourselves or close family member owned stock
12   in -- own any of the Newfield stock at all?  I think I may have
13   asked that earlier.
14        I tell you what, I'm going to -- and I will have a brief
15   conference with the counsel.  Let me ask counsel to -- we'll just
16   do it now.  Would you approach?
17        (The following proceedings were had at the bench and out of
18   the hearing of the jury.)
19            THE COURT:  Are there any other questions that I may
20   not have asked that you want to ask?
21            MR. MAHAFFEY:  If you asked, I didn't hear it, have any
22   of them been party to a lawsuit?  Did you ask that question?
23            THE COURT:  Yeah, I think I did very early on.
24            MR. MAHAFFEY:  Okay.
25            THE COURT:  I can ask it again.
```

1  MR. SMITH:  Who they work for, potential --

2  THE COURT:  See, I'm going to give each --

3  MR. MAHAFFEY:  Because there was a couple of them that

4  didn't have anything listed on their employment record.

5  THE COURT:  Right.  And I wanted to make sure that I

6  have asked all of the questions that -- I have tried to go down

7  everything, and I think I was repeating even.

8  MR. MAHAFFEY:  And if we could -- if we can find out

9  something about them.

10  MR. SINGER:  We're good.

11  (The following record was made in open court, in the

12  presence of all parties, counsel, and in the presence and hearing

13  of the jury.)

14  THE COURT:  Bear with me just a second, ladies and

15  gentlemen.  It won't be much longer.  I think my grandchildren

16  have been here.

17  I'll do it from memory.

18  Ladies and gentlemen of the jury, I would like to start --

19  I'll start with Mr. Clinton and we'll give him the mic and you

20  can just pass that mic down.  Some of you may or may not need it.

21  But really, we want to learn a little bit about you and your

22  families and what you do.

23  And I think these are pretty much the questions:  If you'll

24  tell us your name -- and I'll help you, because by the time it

25  gets to the last person, they'll be able to, obviously, answer

1    each one of the questions.  If you are employed, how are you

2    employed, what do you do, a word about your family, are you --

3    are you married, do you have children, grandchildren.  What do

4    you do in your spare time, if you have any.  Many of us don't

5    have much of that.  What do you like to do in your spare time.

6    And is there -- is there anything at all that you have heard

7    during the course of all these questions being asked of you that

8    would in any way prevent you, if you're selected as a juror in

9    this case, being fair and impartial to both parties -- to all the

10   parties in the lawsuit, anyone that that causes a problem with.

11        So, Mr. Clinton, I'll start with you and I'm sure you can

12   answer all of those, it's five of them.  Oh, and tell us about

13   your work, what do you do.

14             PROSPECTIVE JUROR CLINTON:  My name is Robert Clinton,

15   and I'm 65 years old.  I have been a CPA since 1978.  I have been

16   a lawyer since 1979.  Went to the University of Oklahoma Law

17   School.  I'm married.  I have three children, the youngest of

18   which is 23.  And then I have a small -- I was in the industry

19   for about 25 years as a corporate counsel and a chief financial

20   officer for two different companies, one was United Design

21   Corporation in Noble, the other one is -- was a Georg Fischer

22   Central Plastics in Shawnee.

23        I'm currently self-employed.  I have -- still have a small

24   tax practice as a CPA, and I still do some estate planning work.

25   I would say my legal work is strictly estate-planning oriented.

And then I have a small wealth management firm called Clinton
Wealth Management, and I have got 60 clients and -- in that firm.
And my -- one of my sons works for me in that firm.  I think I
can be fair and impartial to either side, so --

THE COURT:  Thank you very much.  And one question I
always like to hear the answer to, do you have any time for any
hobbies?  And if so, what are they?  What do you do in your spare
time?

PROSPECTIVE JUROR CLINTON:  I used to be very active in
training search and rescue dogs.  I founded the Oklahoma Search
and Rescue Group here in Oklahoma in response to the April 19th,
1995, bombing incident.  We -- I am no longer actively doing
that, although I do still have a highly spirited German shepherd.
And then I occasionally golf.  That's about it.

THE COURT:  Thank you very much, Mr. Clinton.  And if
you'll pass that on to Ms. Malloy.

PROSPECTIVE JUROR MALLOY:  My name is Mary Malloy.
I'm, I guess in the transportation industry.  Twenty-five years
with American Airlines, before that import/export freight
forwarding.  I have a grown daughter, 22, still at home,
exciting.  She runs a nonprofit for animals, and so that keeps us
pretty busy.  I think that ends up being our hobby time.

And through that, she is an organic vegan.  So I brought a
lot of food with me today.  So if we get stuck in this room,
we're fine.  No meat, of course.

1       And so really just the -- in my spare time travel because of

2    the airline.  And I feel I would be -- fracking is something that

3    is very controversial, of course, but I think with this

4    situation, two parties involved in that, I think I could be

5    impartial to listen to both and make a good decision.

6            THE COURT:  Very well.  Do you have -- well, you said a

7    couple of things.  Do you have -- what do you do in your spare

8    time?  You don't have much of it.

9            PROSPECTIVE JUROR MALLOY:  I don't have much of it.

10   Yeah, travel because of the airline benefits, of course, and just

11   the animals, animal care, the fostering, getting animals to that

12   next level to get their permanent homes.  So pretty much that,

13   pretty much that.

14           THE COURT:  And I have got two more questions.  I was

15   delivered my list.

16       How are you employed?  If you're married, is your spouse

17   employed?  If you have children, tell us a little bit about them,

18   if they're small children or adult children, what do they do,

19   little bit about your own educational background, college, high

20   school, degrees, any special permits or licenses that you may

21   hold.  Do you have any hobbies.  And nobody likes this last one,

22   do you have any bumper stickers.  That gives us all levity.

23           PROSPECTIVE JUROR MALLOY:  Bumper stickers, going that

24   way, just one about quit eating animals, but -- sorry, everyone.

25   But nothing really in particular.

1        What was your very first question?

2            THE COURT:  Your employment.

3            PROSPECTIVE JUROR MALLOY:  Yeah.  American Airlines.

4   Worked first as a flight attendant for 16 years.  And then for my

5   daughter, at 13 she asked me to be home more.  So when a teenager

6   wants their mom home, I made the decision to -- to work some at

7   the ticket counter.  So I probably know all of you but not, as

8   you check in for your flights.

9        So really just -- education-wise was really straight from

10  high school, my family had a freight forwarding import/export.

11  So I got my certificate there for the FMC license and then the

12  IATA, so the -- which is the International Air Transportation.

13  So I have always been, I guess, in the transportation field from

14  different aspects of it.

15       Twenty-five years with American.  Just turned 62, so I'm

16  thinking maybe it's time to draw back, travel more.  That's

17  probably, in a nutshell, the whole -- my life, I guess.

18       Divorced.  Minister's wife for 27 years, and so new leaf

19  with that.  So kind of getting into the world like a single mom

20  with the daughter still being at home.  But it's a good time,

21  good chapter, new chapter.

22            THE COURT:  Thank you very much.

23            PROSPECTIVE JUROR EDWARDS:  Can I ask you something?

24            THE COURT:  Yes.  Why don't we wait until we get to

25  you -- Where's my list?

1      Mr. Edwards, can I keep going and then get to you and then

2  I'll let you come to the sidebar, just so we can press forward?

3  Is that okay?

4      Mr. Shirazi?

5          PROSPECTIVE JUROR SHIRAZI:  Yes.  Jason Shirazi.

6  I'm -- I live in Edmond.  I went to the University of Central

7  Oklahoma, got a bachelor's in business and started working for

8  the Department of Defense as a contracting officer.  Then I got a

9  master's -- MBA from Oklahoma City University.  Worked for the

10  government for ten years, then decided to go into oil and gas,

11  did that for a couple of years.  Didn't really care for that, so

12  I went back to the Department of Defense, which I'm currently

13  working for.  I'm a contracting officer, so I negotiate contracts

14  with your tax dollars and I spend them well.

15      I'm also a licensed Realtor.  So that's -- that takes most

16  of my spare time, do that on the side.  I'm married and I have

17  one daughter that's 13 years old.

18          THE COURT:  Time for any hobbies?

19          PROSPECTIVE JUROR SHIRAZI:  I'm an OU fan, watch

20  football and hang out with my kid and my wife.

21          THE COURT:  Thank you very much.

22      Mr. -- is it Mr. Ennis?

23          PROSPECTIVE JUROR ENNIS:  Yes.  My name is Connie

24  Ennis, born and raised in Muskogee, Oklahoma.  Finished high

25  school, attended Northeastern State University in Tahlequah.

1    Went about three and a half years.  I didn't finish.  I have one

2    child, 38 years of age right now.  I have been working with

3    contracts at the Mike Monroney Aeronautical Center, helping teach

4    with -- aviation for the last 34 years.  No hobbies, just look at

5    TV every day when I get off work and go to sleep.  Well, I make

6    it to the casino every now and then.  But I'm still employed,

7    work for Chickasaw Nation contract.  Been on several contracts

8    out there for the 34 years I have been there with the FAA, and

9    that's about it.

10          THE COURT:  Thank you.  Any time for any hobbies,

11   Mr. Ennis?

12          PROSPECTIVE JUROR ENNIS:  Every now and then, like I

13   say, I may go to the casino, but that's about it.

14          THE COURT:  Very well.  Thank you very much.

15       I believe, Mr. Edwards, you wanted to approach the bench,

16   and if counsel would approach with me.

17       (The following proceedings were had at the bench and out of

18   the hearing of the jury.)

19          THE COURT:  I'm -- I stutter really bad, so I can't

20   speak in public.  I'm really -- real anxious and sick in this

21   environment.  I feel like I'm going to throw up.  I don't know if

22   I can -- I can't speak in public.  I feel -- I just feel --

23          THE COURT:  Any questions?

24          MR. SINGER:  I know the feeling.

25          PROSPECTIVE JUROR EDWARDS:  I'm not functioning well in

1   this environment.  I feel sick.  I feel like I'm going --

2           THE COURT:  Let me ask you this, does anyone have an

3   objection to the Court excusing Mr. Edwards?

4           MR. SINGER:  If you feel that strongly about it, I'm

5   not against it.

6           THE COURT:  What I'm going to do, Mr. Edwards, is I'm

7   going to excuse you and you can just -- you don't have to go back

8   -- you have your personal effects?  Just go out the door and

9   then -- you'll push -- don't push basement, but push one.  And

10  then if you have trouble, just ask the CSO, the guy sitting

11  there, or tell someone you want to get to the jury clerk's

12  office.  And she will tell you -- you may get totally excused at

13  this time or she may arrange it for you to come back later,

14  that's their prerogative.  But just make sure you check out with

15  her, the jury clerk.

16          PROSPECTIVE JUROR EDWARDS:  Thank you.  I'm sorry.

17  Thank you.

18          THE COURT:  Don't be sorry.  Blessings to you.

19      (The following record was made in open court, in the

20  presence of all parties, counsel, and in the presence and hearing

21  of the jury.)

22          THE COURT:  The clerk will call the name of a --

23  Mr. Edwards -- the Court excused Mr. Edwards.  The clerk will

24  call the name of one prospective juror randomly.

25          MS. SPAULDING:  Nader Chakroun.

1        THE COURT:  Good afternoon.  Could I get you to spell

2   your last name for me?

3        PROSPECTIVE JUROR CHAKROUN:  Chakroun, C-H-A-K-R-O-U-N

4        THE COURT:  K-R-O-U-N?

5        PROSPECTIVE JUROR CHAKROUN:  Yes.

6        THE COURT:  Thank you very much.  Mr. Chakroun -- I

7   hope I'm pronouncing that correctly -- have you heard all of the

8   many, many questions that have been asked here?

9        PROSPECTIVE JUROR CHAKROUN:  Yes, ma'am.

10        THE COURT:  Do you have any responses to any of those

11   questions that you can recall?  And I'm going to ask you to, you

12   know, share with us about yourself and your own work and so

13   forth.

14        PROSPECTIVE JUROR CHAKROUN:  Not that I can think of,

15   no.

16        THE COURT:  Very well.  Tell us, in the -- the series

17   of questions, how are you employed, if you're married, is your

18   spouse employed, do you have children, are they, you know, minors

19   or teenagers or grown, a word about your educational background

20   and do you have any hobbies, or if you have any bumper stickers

21   that you would like to share.

22        PROSPECTIVE JUROR CHAKROUN:  My name is Nader Chakroun.

23   I'm an electronics design engineer for the Boeing Company.  So I

24   take the Department of Defense's money and try to spend it as

25   well as possible.  Sorry.

1      We -- I graduated from the University of Oklahoma in 2015
2  with a bachelor's degree in electrical engineering.  I am engaged
3  to -- she works in the -- she's a probation tech, here actually,
4  next door, I think.
5              THE COURT:  In the federal system here?
6              PROSPECTIVE JUROR CHAKROUN:  Yes, ma'am.
7              THE COURT:  Oh, congratulations.
8              PROSPECTIVE JUROR CHAKROUN:  Yeah.  She got scared when
9  she saw the letter coming from here.  She was like, why is my
10 office sending you something.
11     I don't have any kids.  I have two dogs.  And I don't have
12 any -- well, I'm one of the lucky ones that my job is my hobby,
13 so I tend to do a lot of projects at home that relate to it, and
14 that I like.  And I do not have any bumper stickers.
15             THE COURT:  Thanks so very much.
16     Is there anything that I haven't asked you about that you
17 think is important for the Court to know at all?
18             PROSPECTIVE JUROR CHAKROUN:  No, ma'am.
19             THE COURT:  Very well.  Thank you very much.
20     Mr. Payne.
21             PROSPECTIVE JUROR PAYNE:  Yes.  My name is Steven
22 Payne.  I'm a graduate of UCO in 1994.  Married, been married 20
23 years.  Have two teenagers.  I'm an IT manager for American
24 Fidelity here in Oklahoma City.  Most of my hobbies are spending
25 time in the gym on basketball courts with my two kids.

1          THE COURT:  Very well.  Thank you.  Anything --
2  anything else?
3          PROSPECTIVE JUROR PAYNE:  No, that's all.
4          THE COURT:  Thank you very much.
5      Ms. Tucker.
6          PROSPECTIVE JUROR TUCKER:  Yes.  My name's Linda
7  Tucker.  I am a registered nurse.  I have been married for 38
8  years.  I got married when I was really young.  I have three
9  grown children, nine grandchildren.  I have been a foster parent
10 for 19 years.  I work at the VA.  I worked for ten years as the
11 medical director at the county jail.  And then I was a labor and
12 delivery nurse and was the manager at Deaconess for labor and
13 delivery, the NICU and the nursery.
14     I love to play golf, go scuba diving.  I just got my license
15 to carry a gun, so I have been shooting.  And I don't have any
16 bumper stickers.  My husband's also a nurse.  And that's it.
17         THE COURT:  Thank you very much, Ms. Tucker.
18     Mr. Smith.
19         PROSPECTIVE JUROR SMITH:  My name is Tanner Smith.  I
20 went to Yukon High School.  I'm currently unemployed.  That's it.
21 I'm sorry.
22         THE COURT:  No, don't be sorry.  Do you have any
23 hobbies that you engage in?
24         PROSPECTIVE JUROR SMITH:  No.
25         THE COURT:  Okay.  Thank you very much, Mr. Smith.

1      Ms. Mosshart.

2          PROSPECTIVE JUROR MOSSHART:  I'm Andrea Mosshart and I

3  graduated from Southern Nazarene University in 2008 with a degree

4  in communications and Christian education.  I'm married to an IT

5  professional who works in Mustang.  We have been married for

6  seven years.  I have one son who's two and a half years old and

7  one on the way.

8          I am finishing my master's degree in spiritual formation and

9  Christian education at Nazarene Theological Seminary and am an

10  ordained pastor in the Church of the Nazarene.  I work at a

11  nonprofit in downtown Oklahoma City called Love Link Ministries

12  that has a food pantry and thrift store.

13          I like to hang out with my son and my family in my spare

14  time, and I also really like watching Thunder games.  And I

15  think -- I do think environmental care is important, but I do

16  think I could be an impartial person in the case.

17          THE COURT:  Very well.  Thank you very much,

18  Ms. Mosshart.

19      Ms. Connel.

20          PROSPECTIVE JUROR CONNEL:  Yes.  My name is Melissa

21  Connel.  I am married and have two grown children, one is married

22  and one is still at home.  I am an executive secretary to the

23  chairman of the board and senior management at FNB Community Bank

24  and have worked there since 1980.  Done a little bit of

25  everything except loans.  Also work for the shareholders of our

1   holding company in that capacity as well.

2       My husband is employed at Tinker Air Force Base, works on

3   B52s.  And hobbies is traveling and probably watching sports, OU

4   football, Thunder games.  That's pretty much it.

5           THE COURT:  Thank you very much, Ms. Connel.

6       Ms. Wall.

7           PROSPECTIVE JUROR WALL:  My name is Jana Wall.  I will

8   be married 26 years tomorrow.  My husband is the mail room

9   supervisor at Mabel Bassett Correction Center.  We have two

10  children, one daughter that's 24 and married and I have a

11  beautiful granddaughter that is two, and I have a son that is 19

12  in college.

13      Most of my spare time is spent with the grand baby.  And I

14  do not have any bumper stickers.  I work for Chandler USA, or

15  better known for National American Insurance in Chandler,

16  Oklahoma.  I have been there 18 years and I am the payroll

17  representative.

18          THE COURT:  Thank you very much, Ms. Connel --

19  Ms. Wall --

20          PROSPECTIVE JUROR SCOTT:  What was the last name?

21          THE COURT:  Oh, are you --

22          PROSPECTIVE JUROR SCOTT:  Scott.

23          THE COURT:  That's Ms. Wall.  I'm sorry.

24      Ms. Scott.  Pardon me.  I'm sorry.  You're recognized.

25          PROSPECTIVE JUROR SCOTT:  My name is Kaila Scott.  It's

1    strange that there's a lot of airline-type things, or planes,

2    something like that.  I also work at the Mike Monroney

3    Aeronautical Center for the FAA.  I'm a contractor with the Civil

4    Aeronautical Medical Institute and we process all the medical

5    documentation needed for renewing and issuing pilot's licenses.

6    I have been there about three and a half years.

7        I am divorced.  I do not have any children.  As far as

8    hobbies, I like to take old -- I do, like, old antique furniture

9    and refinish it, and antiquing.  I like old stuff.  That's -- did

10   I miss anything?

11           THE COURT:  No, you were quite thorough.  Thank you.

12   Thank you very much.

13       And last but not least, Ms. -- is it Simer?

14           PROSPECTIVE JUROR SIMER:  Simer.

15           THE COURT:  Simer.  Excuse me.  Ms. Simer.

16           PROSPECTIVE JUROR SIMER:  That's okay.  I have been

17   married for 29 years and my husband and I have three grown

18   children.  I have worked at the same place for 32 years.  I work

19   contract for the U.S. Postal Service in Norman, as a program

20   manager.  I have done a lot of different things in the 32 years.

21   It's in the maintenance engineering field.  And I do not have any

22   bumper stickers.

23       And my hobbies, I spend a lot of time -- my extra time

24   volunteering at my church and different organizations through

25   that.  And I graduated with a business education degree from

1   Oklahoma Baptist University in 1981 -- '5.  Sorry.  That's it.

2           THE COURT:  Thank you very much.

3       Ladies and gentlemen, that concludes the questions that I

4   have.  What I would ask is that, counsel, you may take a few

5   moments with your respective colleagues and then we'll -- I'll

6   ask you to approach the bench after that.

7       If you-all need to stand up for just a moment, this

8   shouldn't take very much longer.

9       Are counsel ready to sidebar?

10      (The following proceedings were had at the bench and out of

11  the hearing of the jury.)

12          THE COURT:  First of all, let me ask if counsel have

13  any objection to this panel -- first of all, are there any other

14  questions that --

15          MR. MAHAFFEY:  No other questions, Your Honor.

16          MR. SINGER:  No.

17          MR. MAHAFFEY:  And then we have no -- and defendant has

18  no challenge for cause?

19          MR. SINGER:  Agreed, neither does the plaintiff.

20          THE COURT:  Very well.  I will let you-all make your --

21  your strikes, and we'll start with counsel for the plaintiff.

22          MR. SINGER:  We would strike No. 1, Mr. Robert Clinton.

23          MR. MAHAFFEY:  Our first strike would be Juror No. 3,

24  Jason Shirazi.

25          MR. SINGER:  Plaintiff's second strike, Mrs. -- No. 10,

1  Jana Wall, No. 10.

2          MR. MAHAFFEY:  Defendant's 2 is actually Juror No. 2,

3  Mary Malloy.

4          MR. SINGER:  And Plaintiff's 3 would be Mr. Tanner

5  Smith, No. 13.

6          MR. MAHAFFEY:  Defendant's third is Juror No. 12,

7  Andrea Mosshart.

8          THE COURT:  So the following will be excused:

9  Mr. Shirazi, Ms. Malloy, Mr. Clinton, Ms. Wall, Ms. Mosshart and

10  Mr. Smith.  Will those be they?

11          MR. SINGER:  Yes.

12          MR. MAHAFFEY:  Yes.

13          MR. SINGER:  Who is your alternate, Your Honor?

14          THE COURT:  We didn't --

15          MR. SINGER:  No alternate?

16          THE COURT:  We have a seven-person jury.

17          MR. SINGER:  There's not -- the seventh man is not an

18  alternate?  Understood.  Understood.

19          THE COURT:  Why don't I have them come back at 1:30 and

20  that will give us a little time for opening, we'll be ready for

21  opening statement.

22          MR. SINGER:  And you close down the shop at 5:30 or at

23  5:00?

24          THE COURT:  We like to do 5:00.  We don't have any

25  criminals here, but they like those cases to go by 5 o'clock so

1    they can get them back to Grady County.  But we don't have that

2    issue here, but 5:00 is fine.

3            MR. SINGER:  And we'll start tomorrow at 10:00 o'clock,

4    correct?  Is that still --

5            MS. FAGAN:  We have the jury instruction conference at

6    9:00.

7            MR. SINGER:  Oh, is that tomorrow?

8            MS. FAGAN:  Yes.

9        (The following record was made in open court, in the

10   presence of all parties, counsel, and in the presence and hearing

11   of the jury.)

12           THE COURT:  First of all, I would like to address the

13   ladies and gentlemen who invested the same amount of time in this

14   very, very important endeavor.  Thank you for your willingness to

15   serve.  And it just -- it just didn't happen for you, but we

16   thank you for taking your very precious time, because that's what

17   kind of time this is for people who respond to that very

18   important call of jury service.

19       I'm going to excuse those of you who are still seated there

20   and ask you on your way out if you would check with the jury

21   clerk and they will provide you with what you should do next.

22   And again, thank you for your willingness to serve.  You may be

23   excused.

24       (Prospective jurors exited the courtroom.)

25           THE COURT:  I want to thank the ladies and gentlemen

1  who have been answering questions for the last three hours, it

2  seems, for your willingness to serve as -- as a juror.  It's very

3  important service and it's a very important part of our process.

4  And we thank you for your time, for your participation and your

5  willingness to serve.

6       I'm going to excuse six of you, and this will be a jury of

7  seven jurors.  And for those of you whom I'm about to excuse, I

8  would ask you to do the same that I just asked the ladies and

9  gentlemen who left, and that's, if you would, before you leave

10  the building, if you'll just check in with the jury clerk and she

11  or he will tell you what you should do next.  You may be excused

12  until another session or whatever.  Just check with them before

13  you leave the building.

14       And again, for the people that I am about to excuse, I want

15  to thank you.  You have spent a lot of time and energy and effort

16  and -- as everyone did here.  Thank you for your willingness to

17  serve.  There's nothing ever convenient about jury service.  And

18  you have responded to that call and you have done so very well

19  and thank you for your willingness to serve.

20       The following individuals may be excused:  Mr. Shirazi,

21  Ms. Malloy, Mr. Clinton, Mr. Smith, Ms. Mosshart, and Ms. Wall.

22       Again, thanks to each and every one of you who are excused

23  and be sure to check with the jury clerk downstairs before you

24  leave the premises.

25       (Prospective jurors exited.)

1            THE COURT:  Ladies and gentlemen who are -- who remain

2    seated, you will be the jury in this case.  We're going to take

3    lunch until 1:30 because we have been at it awhile.  And we'll

4    ask that when we return, first of all, Ms. Spaulding, our

5    courtroom deputy, will tell you how you -- we'll just close in

6    the empty seats and then I'll have just a brief -- some brief

7    preliminary remarks and then we'll be ready to begin the case in

8    here, the first witness of the plaintiff.

9            You might want to check with the jury clerk to find out

10   places to pick up something to eat.

11           What I was asking about, we haven't had a place in the

12   building to eat in -- since Cesar was a pup, and we have a place

13   now.  And so there's also a place right in the basement floor, if

14   you don't want to leave outside the building.  And I'm sure that

15   the -- if you need any additional assistance on where you might

16   go to -- for your lunch, check with the jury clerk and I'm sure

17   they have a list of sorts.  I think they do.

18           Thank you for your willingness to serve.  I'm not going to

19   give you your oath as jurors until we are ready to actually begin

20   the case.  Enjoy your lunch.  Thank you very much.

21           We'll be in recess.

22           (Lunch recess taken.)

23           THE COURT:  Ladies and gentlemen, please pardon the

24   unusual delay.  We are going to hit the road now.

25           First, I would like to ask the jurors if you would stand and

1   take your oath as jurors in this case.

2        (Jury was sworn.)

3            THE COURT:  You may be seated.

4        Ladies and gentlemen, I have a very brief preliminary jury

5   instruction to give to you.  First of all, now that you have been

6   sworn, I'm going to give you some preliminary instructions to

7   guide you in your participation of the trial.

8        One brief word about your duty, the duty of the jury.  It

9   will be your duty to find from the evidence what the facts are.

10  You and you alone will be the judges of the facts.  You will then

11  have to apply to those facts the law as the Court will give it to

12  you.  You must follow that law, whether you agree with it or not.

13  Nothing that this Court may say or do during the course of the

14  trial is intended to indicate nor should it be taken by you as

15  indicating what your verdict should be.

16       A word about the evidence in the case.  The evidence from

17  which you will find the facts will consist of the testimony of

18  witnesses, documents and other things received into the record as

19  exhibits, and any facts that the lawyers agree to or stipulate

20  to, or should be -- you must -- excuse me -- you must follow that

21  law whether you agree with it or not.

22       Nothing that this Court may say or do during the course of

23  the trial is intended to indicate or should it be taken by you as

24  indicating what your verdict should be.  You are the exclusive

25  body that will determine what the verdict is in this case at the

1    close of the evidence and after your deliberation.

2         A word about the evidence.  The evidence from which you will

3    find the facts will consist of the testimony of witnesses,

4    documents and other things received into the record as exhibits,

5    and any facts that the lawyers agree to or stipulate to or that

6    the Court may instruct you to find.

7         Certain things are not evidence in the case and must not be

8    considered by you.  I will list those things briefly for you now.

9    First, any statements or arguments and questions by lawyers.

10   Those things are not evidence in the case.  Secondly, objections

11   to questions are not evidence.  The lawyers have an obligation to

12   their clients to make objections when they believe that the

13   evidence being offered is improper under the rules of evidence.

14        You should not be influenced in any way by the objection or

15   by this Court's ruling on it.  If the objection is sustained,

16   just ignore the question.  If the objection is overruled, then

17   just treat it like any other answer.  If you are instructed that

18   some item of evidence is received for a very limited purpose

19   only, then you must follow that instruction.  Number 3, testimony

20   that the Court has excluded or told you to disregard is not

21   evidence in the case and must not be considered by you as

22   evidence in the case.

23        There are two kinds of evidence, briefly, direct and

24   circumstantial.  Direct evidence is direct proof of a fact, such

25   as the testimony of an eyewitness.  Circumstantial evidence is

proof of facts from which you may infer or you may conclude that some other facts exist. I'll give you some further instructions later during the course of the trial on these, as well as other matters at the end of the case, but just keep in mind that you may consider both kinds of evidence in reaching your verdict.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or to reject.

I will give you some guidelines for determining the credibility or the believability of witnesses at the very end of the case. This is a civil case and the plaintiff will have the burden of proving its case by what we call a preponderance of the evidence, and we'll talk about that certainly later as the Court instructs you on the law.

Those of you who have perhaps sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement has no application in a civil case. Therefore, you just put it out of your mind.

I will give you, at the end of the evidence, the presentation of the evidence by the lawyers, I will give you very detailed instructions on the law that you should apply to the facts as you find the facts exclusively in this case.

Finally, a word about your conduct as a juror. First -- and you'll hear me say this at the end of every break, I'll usually say something like, ladies and gentlemen, during the break you

1    should not discuss the case among yourselves or allow anyone to

2    discuss it with you or in your presence.  You may note that you

3    get on the elevator and once they see your jury badge, if the

4    door opens, they'll say, we'll get the next one.  They're not

5    being mean, but they should not be there with an active jury.

6         Secondly, do not read or listen to anything touching on this

7    case in any way.  If someone should try to talk to you about the

8    case, just inform them that you are a jury in an active case and

9    they will probably apologize and move on, as they should.

10        Third, I would ask you to try not to make -- to do any

11   research or make any -- any type of investigation about the case

12   on your own.

13        Finally, you're not to form any opinion about the case until

14   all of the evidence is in.  Keep an open mind until you go to

15   that jury room and you start your deliberations at the end of the

16   case.

17        The trial will now begin and each side may make an opening

18   statement.

19        Have they been allotted a time, Ms. Spaulding, or -- 25

20   minutes?  Is that what counsel recall?  Thank you for that

21   assistance.

22        Each side will have 20 minutes to make their opening

23   statements.  An opening statement is neither evidence nor

24   argument, but it's an outline of what that party intends to prove

25   offered to help you follow the law.

1    With that, I believe we're ready to begin and the Court will

2    call on the plaintiff for your opening statement.

3    You're recognized.

4                        (Conclusion of voir dire.)

5

6                    REPORTER'S CERTIFICATION

7         I, Emily Eakle, Federal Official Realtime Court

8    Reporter, in and for the United States District Court for the

9    Western District of Oklahoma, do hereby certify that pursuant to

10   Section 753, Title 28, United States Code that the foregoing is a

11   true and correct transcript of the stenographically reported

12   proceedings held in the above-entitled matter and that the

13   transcript page format is in conformance with the regulations of

14   the Judicial Conference of the United States.

15                  Dated this 19th day of December, 2017.

16

17

18        **/S/ Emily Eakle**
          EMILY EAKLE, RMR, CRR
19        Federal Official Court Reporter

20

21

22

23

24

25